IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MARIA SILVIA ALVA, § | |
|     Plaintiff, § | |
| v. § | NO. EP-3-14-CV-00026-RFC |
| § | |
| CAROLYN W. COLVIN,[1] § | |
| Acting Commissioner of Social Security § | |
| Administration, § | |
|     Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be REVERSED.

## PROCEDURAL HISTORY

On December 22, 2010, Plaintiff filed an application for DIB, alleging a disability onset date of November 14, 2004. (R:114) Later, Plaintiff amended her disability onset date to October 13,

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2008. (R:29) Her application was denied initially and on reconsideration. (R:49, 50) Plaintiff filed a request for a hearing, which was conducted on April 25, 2012. (R:26-48) The Administrative Law Judge ("ALJ") issued a decision on August 21, 2012 denying benefits. (R:14-21) The Appeals Council denied review. (R:1-6)

## ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence, because she failed to accommodate Plaintiff's left elbow tear and left ulnar nerve compression in her RFC determination. (Doc. 20:4) Plaintiff further contends that the ALJ erred by failing to include limitations relating to Plaintiff's inability to communicate in English. (Doc. 20:6) Consequently, Plaintiff seeks reversal and remand for an award of benefits or for further administrative proceedings. (Doc. 20:7) Defendant responds by arguing that the ALJ used the proper legal standards, and that substantial evidence supports the ALJ's findings and conclusions. (Doc. 22:7)

## DISCUSSION

### *I. Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267,

272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id*. A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In applying the substantial evidence standard, the court may not re-weigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id*.; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## II. Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). At step five, the burden shifts to the Commissioner to show there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan,* 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by the use of administrative guidelines provided in the

form of regulations ("grids"). *Rivers v. Schweiker,* 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Anderson*, 887 F.2d at 632.

In the present case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of October 15, 2008, through her date last insured of December 31, 2009. (R:16) At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, lumbalgia, chondromalacia patellae with myxoid degeneration of the right knee, left elbow tear and left ulnar nerve compression, history of right carpal tunnel release, and type II diabetes mellitus. *Id*. At step three, the ALJ found that through the date last insured, none of Plaintiff's impairments, either alone or in combination, met or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:17) Prior to step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday; she should never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; she can frequently stoop and crouch, but only occasionally balance, kneel, and crawl; finally, she should avoid moderate exposure to unprotected heights and moving machinery. *Id*. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (R:20) At step five, considering Plaintiff's age, education, work experience, and RFC, and taking into account vocational expert ("VE") testimony, the ALJ found that Plaintiff acquired work skills from past relevant work that were transferable to other occupations with jobs

that existed in significant numbers in the national economy, i.e., matcher, leather parts (Dictionary of Occupational Titles ("DOT") 783.687-022) and cover inspector (DOT 789.687-038). (R:20-21) She then concluded that Plaintiff was capable of performing other work in the national economy. (R:20) On this basis, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (R:21)

### III. The ALJ's Determination of Plaintiff's Residual Functional Capacity

Residual functional capacity is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In reviewing a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weights four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education and work history. *See Martinez*, 64 F.3d at 174. A review of the record evidence indicates that there is

a lack of substantial evidence, in part, to support the ALJ's conclusion that Plaintiff retained the capacity to perform a reduced range of light work.

**A.     Substantial evidence supports the ALJ's RFC finding, which accommodated Plaintiff's left arm limitations, which existed during the relevant period.**

Plaintiff argues that while the ALJ found Plaintiff's left elbow tear and left ulnar nerve compression severe, she failed to accommodate this left upper extremity impairment in her RFC finding. (Doc. 20:4) She supports this argument by identifying medical evidence of record. *Id*. at 4-5. The Court notes that most of the evidence Plaintiff cites relates to examinations which took place outside the relevant time period. *See id.* A review of the record evidence reveals that substantial evidence does in fact support the ALJ's decision.

On February 2, 2011, state agency physician, Robin Rosenstock, M.D., reviewed the medical evidence of record and concluded that Plaintiff had no manipulative limitations through December 31, 2009. (R:706, 710). Dr. Rosenstock concluded that the objective medical evidence did not express functional loss in the form of reaching, handling, fingering, and feeling limitations during the relevant period. *Id.* On April 1, 2011, state agency physician, John Durfor, M.D., reached the same conclusion. (R:50, 893) State agency physicians are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. *See* SSR 96-6p. Their findings must be treated as expert opinion evidence of non-examining sources by the ALJ. *Id.*

In November, 2008, Plaintiff's treating physician, Dr. Luis E. Linan, M.D., P.A., on musculoskeletal examination, found that Plaintiff's extremities were normal. (R:447, 449) In April 2009, another treating physician, Dr. Richard Westbrook, M.D. examined Plaintiff's left arm. He

determined that she had slight decreased sensation in the distribution of the ulnar nerve but not any noticeable sensory or muscle deficit at this point. (R:256) Consequently, the foregoing medical evidence of record constitutes substantial evidence supporting the ALJ's finding on this point.

The Court is mindful of Plaintiff's emphasis of record evidence which weighs in favor of disability in this area. Unfortunately for Plaintiff, the question here is not whether there is some or even substantial evidence supporting Plaintiff's disability claim, but whether there is substantial evidence, which may be less than a preponderance of the evidence, to support the Commissioner's determination. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000). In reviewing this portion of Plaintiff's no-substantial-evidence claim, the Court has considered the record as a whole and has taken "into account whatever in the record fairly detracts from its weight." *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). The ALJ found that statements made by Plaintiff regarding the intensity, persistence, and limiting effect of her impairments were not credible to the extent that they were inconsistent with the RFC at which she arrived. (R:19) It is within the ALJ's discretion to resolve conflicting evidence, including conflicting medical evidence. *See Jones v. Heckler*, 702 F.3d 616, 621 (5th Cir. 1983). To whatever degree the isolated evidence highlighted by Plaintiff might detract from the weight of the rest of the evidence in the record, it falls far short of that required to establish a no-substantial-evidence claim. Plaintiff's evidence fails to preponderate against the ALJ's determination, much less establish a "conspicuous absence of credible choices" or "contrary medical evidence." *See Abshire,* 848 F.2d at 640.

**B.     Substantial Evidence Supports the ALJ's Finding that Plaintiff was able to communicate in English**

Plaintiff argues that the ALJ failed to include Plaintiff's English language limitations in

Plaintiff's RFC and in the hypothetical question provided to the VE. (Doc. 20:6-7) Defendant responds that an individual's ability to communicate in English is analyzed in conjunction with the individual's educational profile under step five, and is not part of the RFC assessment. (Doc. 22:5-6) Defendant is correct. The regulation defining RFC states that "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1). Physical and mental abilities are assessed in arriving at a claimant's RFC. 20 C.F.R. § 404.1545(b)(c). The ability to communicate in English is not. Thus, Plaintiff's argument is without merit. The Court finds that there was no legal error.

Plaintiff further contends that the same error extends to step five of the sequential evaluation process. (Doc. 20:7) Plaintiff concludes that since the ALJ failed to provide the VE with a hypothetical containing the limitation of Plaintiff's inability to communicate in English, the case should be remanded. *Id*. Essentially, she argues that the Commissioner has failed to meet her burden of proof at step five of the sequential evaluation, a step where such burden lies with the Commissioner, relying on *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994); *Masterson,* 309 F.3d at 271-72. Plaintiff provides by way of argument the fact that Plaintiff testified through an interpreter, she took the GED in Spanish, and indicated in her disability reports that she cannot speak, write, read, or understand English, and that she had to consult with a physician by way of an interpreter. (Doc. 20:6)

The Commissioner responds by arguing that the ALJ found, at step five, that Plaintiff was able to communicate in English. (Doc. 22:6) The Commissioner points out that the ALJ observed that Plaintiff was able to testify without the assistance of the interpreter at times throughout the administrative hearing. *Id.* The Commissioner further contends that, while some of the handwritten

documents Plaintiff submitted were completed in Spanish, Plaintiff completed a Function Report on March 10, 2011, entirely in English. *Id.* The Commissioner concludes that such is substantial evidence supporting the ALJ's decision. (Doc. 22:6-7) A review of the record shows that The Commissioner's arguments are unavailing, inasmuch as it is clear that substantial evidence does not exist to support the ALJ's conclusions concerning Plaintiff's ability to speak, read, and understand English.

The VE testified that Plaintiff could perform the requirements of representative occupations such as a matcher, leather parts (DOT 783.687-022) and a cover inspector (DOT 789.687-038). (R:21) For each of these jobs, the DOT requires the ability to write compound and complex sentences; to speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses; and, to have a passive vocabulary of 5,000-6,000 words, and read at a rate of 190-215 words per minute, *inter alia.* DOT 783.687-022 and 789.687-038. Without any discussion of, or reference to, these language requirements, the VE testified, and the ALJ found, that the expert's testimony was consistent with the information contained in the DOT. (R:21, 36)

Although the Court acknowledges that an ALJ can analyze the demeanor of a claimant and arrive at conclusions about the Plaintiff's ability to communicate in English on the basis thereof, the record in this case does not support the ALJ's conclusion. *See Delgado v. Barnhart,* 305 F.Supp.2d 704 (S.D. Texas 2004). The ALJ's first basis for concluding that Plaintiff can communicate in English is that Plaintiff was able to testify without the help of the interpreter at times throughout the hearing. (R:18) Yet, a review of the transcript of the hearing before the ALJ is unclear as to when, and to what extent, such was the case. (R:28-48) As in *Delgado* the transcript distinguishes the

interpreter's involvement solely when he spoke in English directly to the ALJ.  What, if anything, Plaintiff uttered in English at any time is not made clear by the record; in fact, the record itself does not indicate at what point, if any, Plaintiff spoke in English. (R:28-48)  The Court can only speculate at the extent of Plaintiff's English proficiency from the record, and speculation is not a substitute for substantial evidence.  *See White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.").

      The Commissioner argues that another basis for concluding that Plaintiff can communicate in English is that Plaintiff completed a Function Report on March 10, 2011, entirely in English. (Doc. 22:6-7; R:192-199)  The Court find the same difficulty with this argument.  In comparing the handwriting found in this Function Report with the writing in other documents filled out in Spanish by Plaintiff,  the Court concludes that the handwriting is not at all similar.  This is true with respect to Function Report dated January 14, 2011.  (R:154-161)  Furthermore, another Function Report, dated January 25, 2011, required the services of a translator. (R:170-77)  No one questioned Plaintiff about the Function Report at the hearing to clarify who had written the English responses.  Nor was there any statement made at the hearing to suggest that anyone believed that Plaintiff had filled out the form in English to provide Plaintiff with an opportunity to rebut that assumption.  The ALJ did not indicate either at the hearing or in her written decision that she had considered such inconsistencies and resolved them unfavorably to Plaintiff, nor did she provide the basis for such resolution.

      The Commissioner merely suggests that the Function Report supports the ALJ's finding and conclusion.  The burden is on the Commissioner at this step in the sequential process.  The

Commissioner failed to establish that Plaintiff's English language skills were sufficient to perform the jobs identified by the VE. Because there is not substantial evidence in the record to support the ALJ's step five finding, the cause must be reversed and remanded for further administrative action consistent with this opinion.

## CONCLUSION

The Court concludes that the ALJ's findings are not supported by substantial evidence. Thus, the matter is **REVERSED and REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion.

**SIGNED** and **ENTERED** on April 2, 2015.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE